1   XAVIER BECERRA
    Attorney General of California
2   THOMAS S. PATTERSON
    Senior Assistant Attorney General
3   ANTHONY R. HAKL
    Supervising Deputy Attorney General
4   GABRIELLE D. BOUTIN, SBN 267308
    R. MATTHEW WISE, SBN 238485
5   Deputy Attorneys General
        1300 I Street, Suite 125
6       P.O. Box 944255
        Sacramento, CA 94244-2550
7       Telephone: (916) 210-6046
        Fax: (916) 324-8835
8       E-mail: Matthew.Wise@doj.ca.gov
    *Attorneys for Plaintiff State of California, by and*
9   *through Attorney General Xavier Becerra*

10                  IN THE UNITED STATES DISTRICT COURT

11                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15   STATE OF CALIFORNIA, by and through
     Attorney General Xavier Becerra, CITY OF        **COMPLAINT FOR DECLARATORY**
16   LOS ANGELES, CITY OF LONG BEACH,                **AND INJUNCTIVE RELIEF**
     CITY OF OAKLAND, LOS ANGELES
17   UNIFIED SCHOOL DISTRICT,                        (Fourth and Fifth Claims for Relief –
                                                     Violations of Administrative Procedure Act)
18                                    Plaintiffs,

19            v.

20
     DONALD J. TRUMP, in his official capacity
21   as President of the United States, WILBUR L.
     ROSS, JR., in his official capacity as Secretary
22   of the U.S. Department of Commerce; U.S.
     DEPARTMENT OF COMMERCE; STEVEN
23   DILLINGHAM, in his official capacity as
     Director of the U.S. Census Bureau; U.S.
24   CENSUS BUREAU; DOES 1-100,

25                                   Defendants.

26

27

28

**INTRODUCTION**

1. For 230 years, since the first national census in 1790, the United States has included in the census count not only citizens, but all immigrants, regardless of their legal immigration status.

2. The U.S. Constitution mandates this historical practice by requiring an "actual Enumeration" that "count[s] the whole number of persons in each State" for the purpose of apportioning members of the U.S. House of Representatives among the states. U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

3. Thus, it is well settled that *all* persons residing in the United States must be counted to fulfill the Constitution's "actual Enumeration" mandate for congressional apportionment. *See* U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2; *see also Evenwel v. Abbott*, 136 S. Ct. 1120, 1127-29 (2016) (the Constitution requires the apportionment of Representatives based on the "total population" in each state).

4. Despite this historical practice and longstanding precedent, President Donald J. Trump issued a Presidential Memorandum (Memorandum) on July 21, 2020, announcing a purported "policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status." Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census, 85 Fed. Reg. 44,679 (July 23, 2020) (attached as Ex. 1). The Memorandum orders the Secretary of Commerce to take steps in furtherance of this unlawful policy, including by reporting to the President information that would permit the President to exclude undocumented immigrants from the apportionment count. *Id.* at 44,680.

5. The Memorandum's unprecedented policy and orders are unconstitutional and otherwise unlawful. They threaten to seriously harm Plaintiffs State of California, City of Los Angeles, City of Long Beach, City of Oakland, and Los Angeles Unified School District (LAUSD), including by depriving them of their rightful share of congressional representatives and by depressing the 2020 Census count itself, which remains ongoing.

6. Plaintiffs therefore seek declaratory, injunctive, mandamus, and other relief to prevent Defendants from taking any action to exclude undocumented immigrants from the 2020 Census apportionment count.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act (APA)). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief against the Defendants under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

8. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is a judicial district in which the Plaintiffs State of California and City of Oakland reside, and this action seeks relief against federal agencies and officials acting in their official capacity.

## INTRADISTRICT ASSIGNMENT

9. Under Civil Local Rules 3-5(b) and 3-2(c), Plaintiffs allege that there is no basis for assignment of this action to any particular location or division of this Court.

## PARTIES

10. Plaintiff State of California, by and through Attorney General Xavier Becerra, brings this action as a sovereign state in the United States of America. The Attorney General is the chief law officer of the State and has the authority to file civil actions to protect public rights and interests. Cal. Const. art. V, § 13; Cal. Gov't Code § 12511. This challenge is brought under the Attorney General's independent constitutional, statutory, and common-law authority to bring suit and obtain relief on behalf of the State.

11. Plaintiff City of Los Angeles is a municipal corporation organized and existing under the laws of the State of California.

12. Plaintiff City of Long Beach is a municipal corporation organized and existing under the laws of the State of California.

3

13. Plaintiff City of Oakland is a municipal corporation organized and existing under the laws of the State of California.

14. Plaintiff LAUSD is a public entity duly existing under and by virtue of the laws of the State of California and operating as a public school district providing educational services in the County of Los Angeles, California.

15. Plaintiffs will suffer numerous, concrete harms from Defendants' actions described in this Complaint. Plaintiffs will likely lose at least one seat in the U.S. House of Representatives and, thus, at least one presidential elector in the Electoral College. Plaintiffs' share of political power—and consequently, their share of federal funding—will be diminished. Plaintiffs' congressional, state-level, and local redistricting efforts will be impaired. And the quality and accuracy of census data will be harmed, further reducing the federal funding that Plaintiffs receive and impeding their performance of critical government functions.

16. Defendant Donald J. Trump is the President of the United States of America and is sued in his official capacity. President Trump is responsible for the actions and decisions that are being challenged in this Complaint.

17. Defendant Wilbur L. Ross is the Secretary of the Department of Commerce and is sued in his official capacity. Secretary Ross is responsible for fulfilling the Department of Commerce's duties under the Constitution and the Census Act.

18. Defendant Department of Commerce is a federal agency. The Department of Commerce, led by Secretary Ross, oversees the Census Bureau, which is tasked with executing the 2020 Census.

19. Defendant Dr. Steven Dillingham is the Director of the U.S. Census Bureau and is sued in his official capacity. Dr. Dillingham's duties include ensuring that the Bureau executes the 2020 Census.

20. Defendant U.S. Census Bureau is an agency within, and under the jurisdiction of, the Department of Commerce. The Bureau is responsible for planning and executing the decennial census.

**BACKGROUND**

I.    **LEGAL BACKGROUND**

21.    In every census since 1790, the United States has counted *all* of its residents, including for the purpose of apportioning the U.S. House of Representatives, regardless of residents' citizenship or immigration status.[1]  This practice, consistently followed for well over two centuries, is required by constitutional and statutory mandates.

22.    The U.S. Constitution provides Congress with the power and responsibility to execute the decennial census for the purpose of apportioning the U.S. House of Representatives.  In Article I, the Constitution provides, in relevant part, "Representatives . . . shall be apportioned among the several States . . . according to their respective Numbers." U.S. Const. art I, § 2, cl. 3.  It goes on to state that "[t]he actual enumerations shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct." *Id.*

23.    The Fourteenth Amendment of the U.S. Constitution also governs the census count and its role in apportioning the U.S. House of Representatives.  Section 2 of the Fourteenth Amendment provides, in relevant part, "Representatives shall be apportioned among the several States according to their respective numbers, *counting the whole number of persons in each State, excluding Indians not taxed.*" U.S. Const. amend. XIV, § 2 (emphasis added).

24.    In Title 13 of the United States Code, also known as the Census Act, Congress delegated to the Secretary of Commerce the responsibility for conducting the Census, 13 U.S.C. § 141(a), and created the U.S. Census Bureau within the Department of Commerce, to which the Secretary may delegate his Census Act duties, 13 U.S.C. §§ 2, 4.

25.    The Census Act also governs the Secretary's reporting of the census apportionment count addressed in Article I and the Fourteenth Amendment of the Constitution.  It requires the

---

[1] This statement is subject to two qualifications, explicit in the Constitution, that are historically important, but do not relate to the counting of undocumented immigrants in 2020:  the Three-Fifths Clause that was effectively nullified by the Fourteenth Amendment, and the "Indians not taxed" provision, which is generally not recognized.  The inclusion of two express qualifications (one of which was subsequently nullified) reinforces the impropriety of the executive branch's attempt to add an unenumerated qualification.

1  Secretary to report to the President "[t]he tabulation of *total population* by States . . . as required

2  for the apportionment of Representatives in Congress among the several States." 13 U.S.C.

3  § 141(b) (emphasis added).

4      26.   In turn, the President "shall transmit to the Congress a statement showing *the whole*

5  *number of persons in each State*, excluding Indians not taxed, as ascertained under the . . .

6  decennial census of the population, and the number of Representatives to which each State would

7  be entitled under an apportionment of the then existing number of Representatives by the . . .

8  method of equal proportions." 2 U.S.C. § 2a(a) (emphasis added).

9      27.   The Supreme Court and other courts have also made clear that the Fourteenth

10  Amendment requires the apportionment of Representatives based on the "total population" in

11  each state. *See Evenwel*, 136 S. Ct. at 1127-29; *see also Fed'n for Am. Immigration Reform v.*

12  *Klutznick*, 486 F. Supp. 564, 576-78 (D.D.C. 1980) (three-judge court) (the Constitution "requires

13  the counting of the 'whole number of persons' for apportionment purposes, and while illegal

14  aliens were not a component of the population at the time the Constitution was adopted, they are

15  clearly 'persons'"); *New York v. Dep't of Commerce*, 351 F. Supp. 3d 502, 514 (S.D.N.Y. 2018)

16  (reversed in part on other grounds) ("the Constitution mandates that every ten years the federal

17  government endeavor to count every single person residing in the United States, whether citizen

18  or noncitizen, whether living here with legal status or without," and "[t]he population count

19  derived from that effort is used . . . to apportion Representatives among the states").

20      28.   The Census Bureau similarly recognizes that "[a]pportionment is based on the

21  resident population, plus a count of overseas federal employees, for each of the 50 states." Final

22  2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525, 5526 n.1 (Feb. 8,

23  2018). That is why the Census Bureau promulgated a rule requiring all residents of the United

24  States, including all "foreign citizens," to be counted in the 2020 Census. *Id.* at 5533. This rule,

25  which was adopted in accordance with the notice-and-comment rulemaking process, is known as

26  the "Residence Rule." The Residence Rule is designed to ensure that the Census Bureau counts

27  all U.S. residents at their "usual residence"—"the place where a person lives and sleeps most of

28  the time." *Id.* at 5526.

6

29.     The Secretary of Commerce himself has reiterated to Congress, while under oath, the established rule that all residents must be counted.  On March 14, 2019, the Secretary testified, "The constitutional mandate, sir, for the census is to try to count every person residing in the U.S. at their place of residence on the dates when the census is conducted."  *Hearing Before the H. Comm. on Oversight & Reform*, 116th Cong. 31 (Mar. 14, 2019).  He further testified, "The Department of Commerce is fully committed to administering as complete and accurate [a] decennial census as we can.  We intend to try to count every person, taking all necessary actions to do so."  *Id.*

## II.     THE ADMINISTRATION'S UNLAWFUL ATTEMPT TO ADD A CITIZENSHIP QUESTION TO THE 2020 CENSUS

30.     The Memorandum at issue in this action is directly related to Defendants' earlier efforts to exclude immigrants from the census count by adding a question to the 2020 Census questionnaire on citizenship status.

31.     On March 26, 2018, setting aside decades of practice, Secretary Ross and the Department of Commerce announced that a question on citizenship status would be added to the 2020 Census.  The Secretary claimed that the decision was due to a request from the Department of Justice for the purpose of obtaining data to enforce the Voting Rights Act.[2]

32.     Lawsuits to vacate and enjoin the Secretary's decision were filed by numerous plaintiffs in three district courts (including a suit in this Court by Plaintiffs in this case).  Each court struck down Secretary Ross's decision to add the citizenship question to the 2020 Census.  *State of California v. Ross*, 358 F. Supp. 3d 965, 973-76 (N.D. Cal. 2019) (vacated and remanded on other grounds); *New York v. Dep't of Commerce*, 351 F. Supp. 3d at 679-80; *Kravitz v. Dep't of Commerce*, 366 F. Supp. 3d 681, 691, 756 (D. Md. 2019) (vacated and remanded on other grounds).  Among many other reasons for enjoining the decision, each court found that the Secretary's reason for adding the citizenship question—to aid Voting Rights Act enforcement—was pretextual.

---

[2] In the three-and-a-half years of President Trump's administration, the Department of Justice has filed zero cases to enforce the Voting Rights Act.

33.   The Supreme Court agreed and affirmed the vacatur of the Secretary's decision. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2576 (2019).  As a result, no citizenship question appears on the 2020 Census questionnaire.

34.   The citizenship question litigation before this Court resulted in numerous findings that are relevant to this case.  Among other findings of injury, the Court determined that adding a citizenship question to the 2020 Census would cause a disproportionate undercount of Plaintiffs' residents, which, in turn would create "a substantial risk that California will lose its fair share of political representation in Congress, and by extension, the Electoral College," cause Plaintiffs to lose federal funding, require Plaintiffs to expend funds to mitigate the effects of the citizenship question, and harm the quality of the census data. *State of California v. Ross*, 358 F. Supp. 3d at 992-93, 1003-1005.

## III.   PRESIDENT TRUMP ORDERS FEDERAL AGENCIES TO ASSIST THE CENSUS BUREAU'S COLLECTION OF CITIZENSHIP DATA FROM GOVERNMENT RECORDS

35.   On June 11, 2019, President Trump held a press conference in the White House Rose Garden to announce that, following the Supreme Court's decision in the citizenship question litigation, he would discontinue his efforts to add the question to the 2020 Census.  He also announced, however, that he was issuing an executive order on the Census Bureau's collection of citizenship data.

36.   Accordingly, on June 11, 2019, President Trump issued Executive Order 13880, "Collecting Information About Citizenship Status in Connection With the Decennial Census." 84 Fed. Reg. 33,821.  In that order, the President stated, "we shall ensure that accurate citizenship data is compiled in connection with the census by other means." *Id.* He noted that the Secretary of Commerce had already directed the Census Bureau "to further enhance its administrative record data sets" and "to obtain as many additional Federal and state administrative records as possible." *Id.* To facilitate this effort, the President therefore ordered all federal agencies to "promptly provide the [Commerce] Department the maximum assistance permissible, consistent with law, in determining the number of citizens, non-citizens, and illegal aliens in the country,

8

including by providing any access that the Department may request to administrative records that may be useful in accomplishing that objective." *Id.* at 33,824.

### IV. THE JULY 21, 2020 PRESIDENTIAL MEMORANDUM TO EXCLUDE UNDOCUMENTED IMMIGRANTS FROM THE APPORTIONMENT COUNT

37.   On July 21, 2020, Defendant Trump issued a Presidential Memorandum to the Secretary of Commerce entitled, "Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census," 85 Fed. Reg. 44,679 (July 21, 2020), and an accompanying statement. *See* Ex. 2.  The statement began:

> Last summer in the Rose Garden, I told the American people that I would not back down in my effort to determine the citizenship status of the United States population.  Today, I am following through on that commitment by directing the Secretary of Commerce to exclude illegal aliens from the apportionment base following the 2020 census.

*Id.*

38.   The Memorandum incorrectly asserts that "[t]he Constitution does not specifically define which persons must be included in the apportionment base," that the phrase "persons in each state" has been interpreted to mean "inhabitants," that the scope of the term "inhabitants" requires "the exercise of judgment," and that the President purportedly has discretion to exercise that judgment to exclude entire categories of persons who reside in the United States.  85 Fed. Reg. at 44,679.

39.   On this asserted basis, the Memorandum declares that for reapportionment following the 2020 Census, "it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status under the Immigration and Nationality Act, as amended (8 U.S.C. 1101 et seq.), to the maximum extent feasible and consistent with the discretion delegated to the executive branch." *Id.* at 44,680.

40.   The Memorandum then directs the Secretary of Commerce and the Department of Commerce (and, through them, the Census Bureau) to take steps to allow the President to exclude undocumented immigrants in his apportionment report to Congress issued under 2 U.S.C. § 2(a). *Id.* This includes, but is not limited to, "provid[ing] information" in the report that the Secretary

9

1    must provide to the President under 13 U.S.C. § 141(b) that will "permit[] the President" to

2    exclude undocumented immigrants in calculating the number of U.S. House seats to which each

3    state is entitled. *Id.*

4        41.    Upon information and belief, following receipt of the Memorandum, the

5    Department of Commerce has issued (or will imminently issue) directives to the Census Bureau,

6    constituting final agency action, to implement the policy of excluding undocumented immigrants

7    from the census count used for congressional apportionment, as set forth in the Memorandum.

8        42.    Defendants cannot reliably exclude undocumented immigrants from the

9    apportionment count. Even before the Memorandum issued, the Census Bureau's head of field

10   operations acknowledged that the Bureau will be unable to meet its statutory deadline to report

11   the census count. And just months ago, the federal government represented in separate litigation

12   that there is a "lack of accurate estimates of the resident undocumented population" on a state-by-

13   state basis.[3]

14       43.    Indeed, the federal government admits that it has not yet formulated a methodology

15   for how to exclude undocumented immigrants from the apportionment count. It has suggested

16   that it may be required to use statistical modeling to comply with the Memorandum. Defendants

17   have not articulated how such statistical modeling will comport with their constitutional

18   obligation to conduct an "actual Enumeration," U.S. Const. art. 1, § 2, cl. 3, or their obligations

19   under the Census Act, *see Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316,

20   342 (1999) ("the Census Act prohibits the use of sampling for apportionment purposes").

21   **V.    PLAINTIFFS WILL BE HARMED BY THE EXCLUSION OF UNDOCUMENTED
         IMMIGRANTS FROM THE CENSUS APPORTIONMENT COUNT**
22

23       44.    Plaintiffs each have a high number and percentage of residents who are

24   undocumented immigrants, as compared to other states and localities. These residents enrich

25   Plaintiffs' communities, support their economies, and pay taxes. The Memorandum and the

26   exclusion of undocumented immigrants from the census apportionment count will cause

27   ───────────────
         [3] Decl. of Census Bureau Senior Advisor Enrique Lamas, Defs.' Supp. Rule 26(a)(1)
     Disclosures and Rule 26(a)(2)(C) Disclosures, *Alabama v. Dep't of Commerce*, No. 2:18-cv-
28   00772-RDP (N.D. Ala. Mar. 13, 2020).

1   numerous harms to Plaintiffs.  The harms are due both to the apportionment consequences

2   themselves, and to the chilling effect that the Memorandum will have on the responses of

3   Plaintiffs' residents to the still-ongoing 2020 Census.  Defendants' decision to exclude

4   undocumented immigrants from the apportionment count was announced just weeks before

5   Census Bureau enumerators were scheduled to go into the field to encourage households to

6   respond to the census, creating confusion and further increasing the risk of a differential

7   undercount harmful to Plaintiffs.

8        45.   The Memorandum and the exclusion of undocumented immigrants from the census

9   apportionment count will likely cause Plaintiffs to lose one or more seats in the U.S. House of

10  Representatives and, consequently, one or more electors in the Electoral College.  President

11  Trump expressly states in the Memorandum that this is a primary purpose of excluding

12  undocumented immigrants from the apportionment count:

13          Current estimates suggest that one State is home to more than 2.2
             million illegal aliens, constituting more than 6 percent of the
14          State's entire population. Including these illegal aliens in the
             population of the State for the purpose of apportionment could
15          result in the allocation of two or three more congressional seats
             than would otherwise be allocated.
16

17  85 Fed. Reg. at 44,680.  Upon information and belief, the State referred to in this passage is the

18  State of California.

19       46.   The Memorandum and the exclusion of undocumented immigrants from the census

20  apportionment count will likely cause Plaintiffs to lose federal funding, due to both Plaintiffs' loss

21  of political power in Congress and the differential undercount of Plaintiffs' residents.  A complete

22  and accurate count of all persons is critical to determine grant amounts provided to states and

23  localities for various federal programs.

24       47.   The Memorandum and the exclusion of undocumented immigrants from the census

25  apportionment count will impair Plaintiffs' congressional, state-level, and local redistricting

26  efforts.  The exclusionary apportionment count and differential undercount will harm Plaintiffs'

27  ability to redistrict based on the total number of residents in the state and to comply with

28  Plaintiffs' related constitutional obligations for redistricting.

1      48.    The Memorandum, the exclusion of undocumented immigrants from the census

2  apportionment count, and the resulting differential undercount of Plaintiffs' residents will also

3  harm the quality and accuracy of census data, including data on resident characteristics.  This

4  harm to the data will impede Plaintiffs' performance of critical government functions. .

5      49.    Finally, the Memorandum, the exclusion of undocumented immigrants from the

6  census apportionment count, and the resulting differential undercount of Plaintiffs' residents have

7  required, and imminently will require, Plaintiffs to expend additional resources, including time

8  and money, in order to mitigate the differential undercount.

9

**FIRST CLAIM FOR RELIEF**

10

**VIOLATION OF ACTUAL ENUMERATION AND APPORTIONMENT MANDATES**
**(U.S. Const. art. I, § 2, cl. 3; U.S. Const. amend. XIV, § 2)**

11

12      50.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and

13  paragraph set forth previously.

14      51.    The Constitution requires the "actual Enumeration" of all persons in each state every

15  ten years.  U.S. Const. art. I, § 2, cl. 3.

16      52.    The Fourteenth Amendment requires that "Representatives shall be apportioned

17  among the several States according to their respective numbers, counting the whole number of

18  persons in each State."  U.S. Const. amend. XIV, § 2.

19      53.    Undocumented immigrants are recognized as persons under the Fourteenth

20  Amendment. *Plyler v. Doe*, 457 U.S. 202, 210 (1982).

21      54.    Defying these constitutional mandates to count all persons, including undocumented

22  immigrants, for the purpose of apportionment, the Memorandum declares that "it is the policy of

23  the United States to exclude from the apportionment base" undocumented immigrants. 85 Fed.

24  Reg. at 44,680.  The Memorandum further instructs the Secretary of Commerce "to provide

25  information permitting the President" to implement this unconstitutional policy.  This policy, and

26  any action Defendants take to further the policy, violates the Constitution's Enumeration Clause

27  and the Apportionment Clause of the Fourteenth Amendment.

28

55.   Defendants' violations of the Enumeration Clause and the Apportionment Clause cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF SEPARATION OF POWERS
(U.S. Const. art. I, § 1; U.S. Const. art. II, § 3)

56.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

57.   Article I, Section 1 of the Constitution enumerates that "[a]ll legislative Powers herein granted shall be vested in [the] Congress."

58.   Article II, Section 3 of the Constitution requires the President to "take Care that the Laws be faithfully executed."

59.   The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment, "vests Congress with virtually unlimited discretion in conducting the decennial 'actual Enumeration.'" *Dep't of Commerce v. New York*, 139 S. Ct. at 2566 (quoting *Wisconsin v. City of New York*, 517 U.S. 1, 19 (1996)).

60.   Within nine months of the census date, Congress requires the Secretary to report to the President "[t]he tabulation of total population by States . . . as required for the apportionment of Representatives in Congress among the several States . . . ." 13 U.S.C. § 141(b). Based on that tabulation, Congress mandates that the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions." 2 U.S.C. § 2a(a).

61.   Congress did not authorize the President to exclude undocumented immigrants from the apportionment base. Yet the Memorandum proclaims that when the President calculates "the number of Representatives to which each State would be entitled" and "transmits to the Congress a statement" providing that calculation, he will exclude undocumented immigrants from the

1    apportionment base in disregard of the congressional mandate in 2 U.S.C. § 2a(a).  85 Fed. Reg.

2    at 44,680.

3        62.    Under the separation of powers, the executive branch "may not decline to follow a

4    statutory mandate . . . simply because of policy objections.  *In re Aiken Cty.*, 725 F.3d 255, 259

5    (D.C. 2013).  The President's unilateral exclusion of undocumented immigrants from the

6    apportionment base is "incompatible" with Congress's will.  *See Youngstown Sheet & Tube Co. v.*

7    *Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

8        63.    Nor has Congress delegated to the President the authority to take the census or to

9    dictate what is included in the Secretary's report to him.  By requiring the Secretary, in preparing

10   his report to the President, to "take all appropriate action" to implement the Memorandum's

11   unconstitutional policy of excluding undocumented immigrants from the apportionment base, and

12   to include in the report estimates of the number of undocumented immigrants in each state, 85

13   Fed. Reg. at 44,680, the President disregards Congress's intent in the Census Act that all persons

14   be counted in the apportionment.  *See Youngstown*, 343 U.S. at 637 (Jackson, J., concurring).

15       64.    When the President usurps Congress's authority in this manner, "his power is at its

16   lowest ebb," *id.*, and he has failed his duty to "take Care that the Laws be faithfully executed,"

17   U.S. Const. art. II, § 3.  The Memorandum thus violates the Constitution's separation of powers.

18       65.    The President's violations of separation of powers principles cause ongoing,

19   irreparable harm to Plaintiffs and their residents, including the denial of California's

20   proportionate share of congressional representatives and Electoral College electors.

21                        **THIRD CLAIM FOR RELIEF**

22                 **VIOLATION OF CENSUS ACT (ULTRA VIRES)**
                    **(2 U.S.C. § 2a(a); 13 U.S.C. § 141)**
23

24       66.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and

25   paragraph set forth previously.

26       67.    The Census Act requires the Secretary of Commerce to report to the President, within

27   nine months of the census date, "[t]he tabulation of total population by States . . . as required for

28   the apportionment of Representatives in Congress among the several States . . . ."  13 U.S.C.

                                        14

§ 141(b). Based on that tabulation, the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions." 2 U.S.C. § 2a(a).

68.   To determine "[t]he tabulation of total population by States," 13 U.S.C. § 141(b), persons were counted at their "usual residence" under "the first enumeration Act and ha[ve] been [so counted] by the Census Bureau ever since . . . ." *Franklin v. Massachusetts*, 505 U.S. 788, 804 (1992). The Census Bureau has adopted this methodology in its Residence Rule, which requires that each person is counted in "the place where [the] person lives and sleeps most of the time." 83 Fed. Reg. at 5526.

69.   Under the Residence Rule, "[c]itizens of foreign countries living in the United States" are "[c]ounted at the U.S. residence where they live and sleep most of the time." 83 Fed. Reg. at 5533. Undocumented immigrants are thus counted at their usual residence and included in the tabulation of total population reported to the President. *Id.*

70.   The Memorandum violates 13 U.S.C. § 141. It directs the Secretary, in preparing his report to the President, to "take all appropriate action" to implement the Memorandum's unconstitutional policy of excluding undocumented immigrants from the apportionment base, and to include in the report estimates of the number of undocumented immigrants in each state. These directives violate 13 U.S.C. § 141's requirements that the Secretary conduct an actual Enumeration to determine the "total population by States"—including undocumented immigrants—"as required for the apportionment of Representatives in Congress among the several States," and report only that tabulation to the President.

71.   The Memorandum also violates 2 U.S.C. § 2a(a). It proclaims that when the President calculates "the number of Representatives to which each State would be entitled" and "transmits to the Congress a statement" providing that calculation, 2 U.S.C. § 2a(a), he will exclude undocumented immigrants from the apportionment base. 85 Fed. Reg. at 44,680. This policy violates 2 U.S.C. § 2a(a)'s requirements that the President use only the actual Enumeration

of "the whole number of persons in each State" to calculate the apportionment of congressional representatives, and to perform that calculation "by the . . . method of equal proportions."

72.   Neither the President nor an agency can take any action that exceeds the scope of constitutional or statutory authority. *See Youngstown*, 343 U.S. at 588-89.  By violating the Census Act, the President and the Secretary act ultra vires.

73.   Defendants' violations of the Census Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
(Action Not in Accordance with Law in Violation of 5 U.S.C. § 706)

74.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

75.   The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment, is implemented through the Census Act.  The Census Act requires the Secretary of Commerce to report to the President, within nine months of the census date, "[t]he tabulation of total population by States"—including undocumented immigrants—"as required for the apportionment of Representatives in Congress among the several States . . . ."  13 U.S.C. § 141(b).  Based on that tabulation, the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions."  2 U.S.C. § 2a(a).

76.   The Administrative Procedure Act provides that a court must "hold unlawful and set aside agency action" that is not in accordance with law, contrary to constitutional right, in excess of statutory authority, or without observance of procedure required by law.  5 U.S.C. § 706(2).

77.   The Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment is not in accordance with and exceeds the President's authority under the Census Act, and it is contrary to the Enumeration Clause.

16

78.    Upon information and belief, the Department of Commerce has directed or will direct the Census Bureau, in a final agency action, to implement the Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment, in violation of these provisions of the Administrative Procedure Act.

79.    Among the violations is Defendants' failure to observe the Administrative Procedure Act's notice-and-comment rulemaking requirement before dispensing with the Census Bureau's long-established Residence Rule.  Absent sufficient notice and comment, the Census Bureau is prohibited from implementing the Memorandum's unconstitutional policy of excluding undocumented immigrants from the enumeration used for apportionment and superseding the Residence Rule's requirement to count all persons—including undocumented immigrants—"at the U.S. residence where they live and sleep most of the time." 83 Fed. Reg. at 5533.

80.    Defendants have or imminently will also violate the Administrative Procedure Act to the extent that, in order to exclude undocumented immigrants from the apportionment, Defendants utilize any statistical method to that fails to comport with the constitutional obligation to conduct an "actual Enumeration," U.S. Const. art. 1, § 2, cl. 3, or obligations under the Census Act.

81.    The Secretary's actions to implement the Memorandum's policy are additional final agency actions that violate these provisions of the Administrative Procedure Act.

82.    Defendants' violations of the Administrative Procedure Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
**(Action that Is Arbitrary and Capricious in Violation of 5 U.S.C. § 706)**

83.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

84.    The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment, is implemented through the Census Act.  The Census Act requires the Secretary of Commerce to

report to the President, within nine months of the census date, "[t]he tabulation of total population by States"—including undocumented immigrants—"as required for the apportionment of Representatives in Congress among the several States . . . ." 13 U.S.C. § 141(b). Based on that tabulation, the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions." 2 U.S.C. § 2a(a).

85.   The Administrative Procedure Act provides that a court must "hold unlawful and set aside agency action that is arbitrary and capricious, an abuse of discretion, runs counter to the evidence before the agency, or fails to consider an important aspect of the problem. 5 U.S.C. § 706; *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

86.   Upon information and belief, the Department of Commerce has directed or will direct the Census Bureau, in a final agency action, to implement the Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment, in violation of these provisions of the Administrative Procedure Act.

87.   Defendants act arbitrarily and capriciously because, among other things, they acted or will imminently act without sufficient data, and without sufficient time to produce such data, to determine the total number of undocumented immigrants in each state to exclude from the apportionment base.

88.   The Secretary's actions to implement the Memorandum's policy are additional final agency actions that violate these provisions of the Administrative Procedure Act.

89.   Defendants' violations of the Administrative Procedure Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

## SIXTH CLAIM FOR RELIEF

### DECLARATORY RELIEF
### (28 U.S.C. § 2201)

90.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

91.     An actual controversy presently exists between Plaintiffs and Defendants about whether the Constitution and Census Act require the apportionment base used to apportion congressional representatives to include all persons counted in each state, including undocumented immigrants.

92.     Plaintiffs are entitled to a declaration that the Constitution and the Census Act require the apportionment base used to apportion congressional representatives to include all persons counted in each state, including undocumented immigrants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Issue a declaration that Defendants' decision to exclude undocumented immigrants from the apportionment base following the 2020 Census, and any action to implement that decision, violate the Constitution and laws of the United States;

2.     Issue a declaration that Defendants' decision to exclude undocumented immigrants from the apportionment base following the 2020 Census, and any action to implement that decision, violate the Administrative Procedure Act;

3.     Issue a preliminary and permanent injunction enjoining Defendants and all those acting in concert with them from excluding undocumented immigrants from the apportionment base following the 2020 Census, or taking any action to implement that policy;

4.     Issue a writ of mandamus compelling the Secretary of Commerce to tabulate and report the total population by States under 13 U.S.C. § 141(b) based on the actual enumeration of the whole number of persons in each state, including undocumented immigrants, without providing a report estimating the number of undocumented immigrants in each state;

5.     Issue a writ of mandamus compelling the President to transmit to the Congress a statement showing the whole number of persons in each State, including undocumented immigrants, and the number of congressional representatives to which each State would be entitled under an apportionment calculated by the method of equal proportions;

6.     Award Plaintiffs costs, expenses, and reasonable attorney fees; and

7.     Award such other relief as the Court deems just and proper.

19

Dated:  July 28, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General


/s/ R. Matthew Wise

GABRIELLE D. BOUTIN
R. MATTHEW WISE
Deputy Attorneys General
*Attorneys for Plaintiff State of California*

Dated:  July 28, 2020

MIKE FEUER
City Attorney for the City of Los Angeles

/s/ Valerie Flores
VALERIE FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL J. DUNDAS, SBN 226930
Deputy City Attorney
200 North Main Street, 7th Floor, MS 140
Los Angeles, CA  90012
Telephone: (213) 978-8130
Fax: (213) 978-8222
Email: Valerie.Flores@lacity.org

Dated:  July 28, 2020

CHARLES PARKIN
City Attorney for the City of Long Beach

/s/ Charles Parkin
SBN 159162
333 W. Ocean Blvd., 11th Floor
Long Beach CA, 90802
Telephone: (562) 570-2200
Fax: (562) 436-1579
Email: Charles.Parkin@longbeach.gov

Complaint

Dated:  July 28, 2020

BARBARA J. PARKER
City Attorney for the City of Oakland

*/s/ Maria Bee*
MARIA BEE, SBN 167716
Chief Assistant City Attorney
MALIA MCPHERSON
Deputy City Attorney
City Hall, 6th Floor
1 Frank Ogawa Plaza
Oakland, California 94612
Telephone: (510) 238-3601
Fax: (510) 238-6500
Email: mbee@oaklandcityattorney.org

Dated:  July 28, 2020

DANNIS WOLIVER KELLEY

*/s/ Sue Ann Salmon Evans*
Sue Ann Salmon Evans, SBN 151562
Keith A. Yeomans, SBN 245600
115 Pine Avenue, Suite 500
Long Beach, CA  90802
Telephone: 562.366.8500
Facsimile: 562.366.8505
sevans@DWKesq.com
kyeomans@DWKesq.com
*Attorneys for Los Angeles United School District*

Complaint