1  XAVIER BECERRA
   Attorney General of California
2  THOMAS S. PATTERSON
   Senior Assistant Attorney General
3  ANTHONY R. HAKL
   Supervising Deputy Attorney General
4  GABRIELLE D. BOUTIN, SBN 267308
   R. MATTHEW WISE, SBN 238485
5  Deputy Attorneys General
     1300 I Street, Suite 125
6    P.O. Box 944255
     Sacramento, CA 94244-2550
7    Telephone:  (916) 210-6046
     Fax:  (916) 324-8835
8    E-mail:  Matthew.Wise@doj.ca.gov
   *Attorneys for Plaintiff State of California, by and*
9  *through Attorney General Xavier Becerra*

10                    IN THE UNITED STATES DISTRICT COURT

11                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15  STATE OF CALIFORNIA, by and through          CASE NO. 5:20-cv-05169-LHK
    Attorney General Xavier Becerra, CITY OF
16  LOS ANGELES, CITY OF LONG BEACH,             **FIRST AMENDED COMPLAINT FOR
    CITY OF OAKLAND, LOS ANGELES                 DECLARATORY AND INJUNCTIVE
17  UNIFIED SCHOOL DISTRICT, COUNTY              RELIEF**
    OF LOS ANGELES,
18                                               (Fourth and Fifth Claims for Relief –
                                    Plaintiffs,  Violations of Administrative Procedure Act)
19
                  v.
20

21  DONALD J. TRUMP, in his official capacity
    as President of the United States, WILBUR L.
22  ROSS, JR., in his official capacity as Secretary
    of the U.S. Department of Commerce; U.S.
23  DEPARTMENT OF COMMERCE; STEVEN
    DILLINGHAM, in his official capacity as
24  Director of the U.S. Census Bureau; U.S.
    CENSUS BUREAU; DOES 1-100,
25
                                    Defendants.
26

27

28

                                          1

**INTRODUCTION**

1.     For 230 years, since the first national census in 1790, the United States has included in the census count not only citizens, but all immigrants, regardless of their legal immigration status.

2.     The U.S. Constitution mandates this historical practice by requiring an "actual Enumeration" that "count[s] the whole number of persons in each State" for the purpose of apportioning members of the U.S. House of Representatives among the states.  U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2.

3.     Thus, it is well settled that *all* persons residing in the United States must be counted to fulfill the Constitution's "actual Enumeration" mandate for congressional apportionment.  *See* U.S. Const. art. I, § 2, cl. 3, and amend. XIV, § 2; *see also Evenwel v. Abbott*, 136 S. Ct. 1120, 1127-29 (2016) (the Constitution requires the apportionment of Representatives based on the "total population" in each state).

4.     Despite this historical practice and longstanding precedent, President Donald J. Trump issued a Presidential Memorandum (Memorandum) on July 21, 2020, announcing a purported "policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status."  Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census, 85 Fed. Reg. 44,679 (July 23, 2020) (attached as Ex. 1).  The Memorandum orders the Secretary of Commerce to take steps in furtherance of this unlawful policy, including by reporting to the President information that would permit the President to exclude undocumented immigrants from the apportionment count.  *Id.* at 44,680.

5.     The Memorandum's unprecedented policy and orders are unconstitutional and otherwise unlawful.  They threaten to seriously harm Plaintiffs State of California, City of Los Angeles, City of Long Beach, City of Oakland, Los Angeles Unified School District (LAUSD), and County of Los Angeles, including by depriving them of their rightful share of congressional representatives and by depressing the 2020 Census count itself, which remains ongoing.

6.      Plaintiffs therefore seek declaratory, injunctive, mandamus, and other relief to prevent Defendants from taking any action to exclude undocumented immigrants from the 2020 Census apportionment count.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act (APA)).  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief against the Defendants under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is a judicial district in which the Plaintiffs State of California and City of Oakland reside, and this action seeks relief against federal agencies and officials acting in their official capacity.

## INTRADISTRICT ASSIGNMENT

9.      Under Civil Local Rules 3-5(b) and 3-2(c), Plaintiffs allege that there is no basis for assignment of this action to any particular location or division of this Court.

## PARTIES

10.     Plaintiff State of California, by and through Attorney General Xavier Becerra, brings this action as a sovereign state in the United States of America.  The Attorney General is the chief law officer of the State and has the authority to file civil actions to protect public rights and interests.  Cal. Const. art. V, § 13; Cal. Gov't Code § 12511.  This challenge is brought under the Attorney General's independent constitutional, statutory, and common-law authority to bring suit and obtain relief on behalf of the State.

11.     Plaintiff City of Los Angeles is a municipal corporation organized and existing under the laws of the State of California.

12.     Plaintiff City of Long Beach is a municipal corporation organized and existing under the laws of the State of California.

3

13.    Plaintiff City of Oakland is a municipal corporation organized and existing under the laws of the State of California.

14.    Plaintiff LAUSD is a public entity duly existing under and by virtue of the laws of the State of California and operating as a public school district providing educational services in the County of Los Angeles, California.

15.    Plaintiff County of Los Angeles is a political subdivision of the State of California.

16.    Plaintiffs will suffer numerous, concrete harms from Defendants' actions described in this Complaint.  Plaintiffs will likely lose at least one seat in the U.S. House of Representatives and, thus, at least one presidential elector in the Electoral College.  Plaintiffs' share of political power—and consequently, their share of federal funding—will be diminished.  Plaintiffs' congressional, state-level, and local redistricting efforts will be impaired.  And the quality and accuracy of census data will be harmed, further reducing the federal funding that Plaintiffs receive and impeding their performance of critical government functions.

17.    Defendant Donald J. Trump is the President of the United States of America and is sued in his official capacity.  President Trump is responsible for the actions and decisions that are being challenged in this Complaint.

18.    Defendant Wilbur L. Ross is the Secretary of the Department of Commerce and is sued in his official capacity.  Secretary Ross is responsible for fulfilling the Department of Commerce's duties under the Constitution and the Census Act.

19.    Defendant Department of Commerce is a federal agency.  The Department of Commerce, led by Secretary Ross, oversees the Census Bureau, which is tasked with executing the 2020 Census.

20.    Defendant Dr. Steven Dillingham is the Director of the U.S. Census Bureau and is sued in his official capacity.  Dr. Dillingham's duties include ensuring that the Bureau executes the 2020 Census.

21.    Defendant U.S. Census Bureau is an agency within, and under the jurisdiction of, the Department of Commerce.  The Bureau is responsible for planning and executing the decennial census.

# BACKGROUND

## I.   LEGAL BACKGROUND

22.   In every census since 1790, the United States has counted *all* of its residents, including for the purpose of apportioning the U.S. House of Representatives, regardless of residents' citizenship or immigration status.[1]  This practice, consistently followed for well over two centuries, is required by constitutional and statutory mandates.

23.   The U.S. Constitution provides Congress with the power and responsibility to execute the decennial census for the purpose of apportioning the U.S. House of Representatives.  In Article I, the Constitution provides, in relevant part, "Representatives . . . shall be apportioned among the several States . . . according to their respective Numbers."  U.S. Const. art I, § 2, cl. 3.  It goes on to state that "[t]he actual enumerations shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct."  *Id.*

24.   The Fourteenth Amendment of the U.S. Constitution also governs the census count and its role in apportioning the U.S. House of Representatives.  Section 2 of the Fourteenth Amendment provides, in relevant part, "Representatives shall be apportioned among the several States according to their respective numbers, *counting the whole number of persons in each State*, excluding Indians not taxed."  U.S. Const. amend. XIV, § 2 (emphasis added).

25.   In Title 13 of the United States Code, also known as the Census Act, Congress delegated to the Secretary of Commerce the responsibility for conducting the Census, 13 U.S.C. § 141(a), and created the U.S. Census Bureau within the Department of Commerce, to which the Secretary may delegate his Census Act duties, 13 U.S.C. §§ 2, 4.

26.   The Census Act also governs the Secretary's reporting of the census apportionment count addressed in Article I and the Fourteenth Amendment of the Constitution.  It requires the

---

[1] This statement is subject to two qualifications, explicit in the Constitution, that are historically important, but do not relate to the counting of undocumented immigrants in 2020:  the Three-Fifths Clause that was effectively nullified by the Fourteenth Amendment, and the "Indians not taxed" provision, which is generally not recognized.  The inclusion of two express qualifications (one of which was subsequently nullified) reinforces the impropriety of the executive branch's attempt to add an unenumerated qualification.

1    Secretary to report to the President "[t]he tabulation of *total population* by States . . . as required

2    for the apportionment of Representatives in Congress among the several States."  13 U.S.C.

3    § 141(b) (emphasis added).

4           27.    In turn, the President "shall transmit to the Congress a statement showing *the whole*

5    *number of persons in each State,* excluding Indians not taxed, as ascertained under the . . .

6    decennial census of the population, and the number of Representatives to which each State would

7    be entitled under an apportionment of the then existing number of Representatives by the . . .

8    method of equal proportions."  2 U.S.C. § 2a(a) (emphasis added).

9           28.    The Supreme Court and other courts have also made clear that the Fourteenth

10   Amendment requires the apportionment of Representatives based on the "total population" in

11   each state.  *See Evenwel*, 136 S. Ct. at 1127-29; *see also Fed'n for Am. Immigration Reform v.*

12   *Klutznick*, 486 F. Supp. 564, 576-78 (D.D.C. 1980) (three-judge court) (the Constitution "requires

13   the counting of the 'whole number of persons' for apportionment purposes, and while illegal

14   aliens were not a component of the population at the time the Constitution was adopted, they are

15   clearly 'persons'"); *New York v. Dep't of Commerce*, 351 F. Supp. 3d 502, 514 (S.D.N.Y. 2018)

16   (reversed in part on other grounds) ("the Constitution mandates that every ten years the federal

17   government endeavor to count every single person residing in the United States, whether citizen

18   or noncitizen, whether living here with legal status or without," and "[t]he population count

19   derived from that effort is used . . . to apportion Representatives among the states").

20          29.    The Census Bureau similarly recognizes that "[a]pportionment is based on the

21   resident population, plus a count of overseas federal employees, for each of the 50 states."  Final

22   2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525, 5526 n.1 (Feb. 8,

23   2018).  That is why the Census Bureau promulgated a rule requiring all residents of the United

24   States, including all "foreign citizens," to be counted in the 2020 Census.  *Id.* at 5533.  This rule,

25   which was adopted in accordance with the notice-and-comment rulemaking process, is known as

26   the "Residence Rule."  The Residence Rule is designed to ensure that the Census Bureau counts

27   all U.S. residents at their "usual residence"—"the place where a person lives and sleeps most of

28   the time."  *Id.* at 5526.

30.     The Secretary of Commerce himself has reiterated to Congress, while under oath, the established rule that all residents must be counted.  On March 14, 2019, the Secretary testified, "The constitutional mandate, sir, for the census is to try to count every person residing in the U.S. at their place of residence on the dates when the census is conducted."  *Hearing Before the H. Comm. on Oversight & Reform*, 116th Cong. 31 (Mar. 14, 2019).  He further testified, "The Department of Commerce is fully committed to administering as complete and accurate [a] decennial census as we can.  We intend to try to count every person, taking all necessary actions to do so."  *Id.*

## II.     THE ADMINISTRATION'S UNLAWFUL ATTEMPT TO ADD A CITIZENSHIP QUESTION TO THE 2020 CENSUS

31.     The Memorandum at issue in this action is directly related to Defendants' earlier efforts to exclude immigrants from the census count by adding a question to the 2020 Census questionnaire on citizenship status.

32.     On March 26, 2018, setting aside decades of practice, Secretary Ross and the Department of Commerce announced that a question on citizenship status would be added to the 2020 Census.  The Secretary claimed that the decision was due to a request from the Department of Justice for the purpose of obtaining data to enforce the Voting Rights Act.[2]

33.     Lawsuits to vacate and enjoin the Secretary's decision were filed by numerous plaintiffs in three district courts (including a suit in this Court by Plaintiffs in this case).  Each court struck down Secretary Ross's decision to add the citizenship question to the 2020 Census.  *State of California v. Ross*, 358 F. Supp. 3d 965, 973-76 (N.D. Cal. 2019) (vacated and remanded on other grounds); *New York v. Dep't of Commerce*, 351 F. Supp. 3d at 679-80; *Kravitz v. Dep't of Commerce*, 366 F. Supp. 3d 681, 691, 756 (D. Md. 2019) (vacated and remanded on other grounds).  Among many other reasons for enjoining the decision, each court found that the Secretary's reason for adding the citizenship question—to aid Voting Rights Act enforcement—was pretextual.

---

[2] In the three-and-a-half years of President Trump's administration, the Department of Justice has filed zero cases to enforce the Voting Rights Act.

34.     The Supreme Court agreed and affirmed the vacatur of the Secretary's decision. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2576 (2019).  As a result, no citizenship question appears on the 2020 Census questionnaire.

35.     The citizenship question litigation before this Court resulted in numerous findings that are relevant to this case.  Among other findings of injury, the Court determined that adding a citizenship question to the 2020 Census would cause a disproportionate undercount of Plaintiffs' residents, which, in turn would create "a substantial risk that California will lose its fair share of political representation in Congress, and by extension, the Electoral College," cause Plaintiffs to lose federal funding, require Plaintiffs to expend funds to mitigate the effects of the citizenship question, and harm the quality of the census data.  *State of California v. Ross*, 358 F. Supp. 3d at 992-93, 1003-1005.

### III.   PRESIDENT TRUMP ORDERS FEDERAL AGENCIES TO ASSIST THE CENSUS BUREAU'S COLLECTION OF CITIZENSHIP DATA FROM GOVERNMENT RECORDS

36.     On June 11, 2019, President Trump held a press conference in the White House Rose Garden to announce that, following the Supreme Court's decision in the citizenship question litigation, he would discontinue his efforts to add the question to the 2020 Census.  He also announced, however, that he was issuing an executive order on the Census Bureau's collection of citizenship data.

37.     Accordingly, on June 11, 2019, President Trump issued Executive Order 13880, "Collecting Information About Citizenship Status in Connection With the Decennial Census."  84 Fed. Reg. 33,821.  In that order, the President stated, "we shall ensure that accurate citizenship data is compiled in connection with the census by other means."  *Id.*  He noted that the Secretary of Commerce had already directed the Census Bureau "to further enhance its administrative record data sets" and "to obtain as many additional Federal and state administrative records as possible."  *Id.*  To facilitate this effort, the President therefore ordered all federal agencies to "promptly provide the [Commerce] Department the maximum assistance permissible, consistent with law, in determining the number of citizens, non-citizens, and illegal aliens in the country,

including by providing any access that the Department may request to administrative records that may be useful in accomplishing that objective."  *Id.* at 33,824.

### IV.   THE JULY 21, 2020 PRESIDENTIAL MEMORANDUM TO EXCLUDE UNDOCUMENTED IMMIGRANTS FROM THE APPORTIONMENT COUNT

38.   On July 21, 2020, Defendant Trump issued a Presidential Memorandum to the Secretary of Commerce entitled, "Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census," 85 Fed. Reg. 44,679 (July 21, 2020), and an accompanying statement.  *See* Ex. 2.  The statement began:

> Last summer in the Rose Garden, I told the American people that I would not back down in my effort to determine the citizenship status of the United States population.  Today, I am following through on that commitment by directing the Secretary of Commerce to exclude illegal aliens from the apportionment base following the 2020 census.

*Id.*

39.   The Memorandum incorrectly asserts that "[t]he Constitution does not specifically define which persons must be included in the apportionment base," that the phrase "persons in each state" has been interpreted to mean "inhabitants," that the scope of the term "inhabitants" requires "the exercise of judgment," and that the President purportedly has discretion to exercise that judgment to exclude entire categories of persons who reside in the United States.  85 Fed. Reg. at 44,679.

40.   On this asserted basis, the Memorandum declares that for reapportionment following the 2020 Census, "it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status under the Immigration and Nationality Act, as amended (8 U.S.C. 1101 et seq.), to the maximum extent feasible and consistent with the discretion delegated to the executive branch."  *Id.* at 44,680.

41.   The Memorandum then directs the Secretary of Commerce and the Department of Commerce (and, through them, the Census Bureau) to take steps to allow the President to exclude undocumented immigrants in his apportionment report to Congress issued under 2 U.S.C. § 2(a). *Id.*  This includes, but is not limited to, "provid[ing] information" in the report that the Secretary

9

must provide to the President under 13 U.S.C. § 141(b) that will "permit[] the President" to exclude undocumented immigrants in calculating the number of U.S. House seats to which each state is entitled. *Id.*

42.   Upon information and belief, following receipt of the Memorandum, the Department of Commerce has issued (or will imminently issue) directives to the Census Bureau, constituting final agency action, to implement the policy of excluding undocumented immigrants from the census count used for congressional apportionment, as set forth in the Memorandum.

43.   Defendants cannot reliably exclude undocumented immigrants from the apportionment count.  Even before the Memorandum issued, the Census Bureau's head of field operations acknowledged that the Bureau will be unable to meet its statutory deadline to report the census count.  And just months ago, the federal government represented in separate litigation that there is a "lack of accurate estimates of the resident undocumented population" on a state-by-state basis.[3]

44.   Indeed, the federal government admits that it has not yet formulated a methodology for how to exclude undocumented immigrants from the apportionment count.  It has suggested that it may be required to use statistical modeling to comply with the Memorandum.  Defendants have not articulated how such statistical modeling will comport with their constitutional obligation to conduct an "actual Enumeration," U.S. Const. art. 1, § 2, cl. 3, or their obligations under the Census Act, *see* 13 U.S.C. § 195; *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 342 (1999) ("the Census Act prohibits the use of sampling for apportionment purposes").

**V.   PLAINTIFFS WILL BE HARMED BY THE EXCLUSION OF UNDOCUMENTED IMMIGRANTS FROM THE CENSUS APPORTIONMENT COUNT**

45.   Plaintiffs each have a high number and percentage of residents who are undocumented immigrants, as compared to other states and localities.  These residents enrich Plaintiffs' communities, support their economies, and pay taxes.  The Memorandum and the

---

[3] Decl. of Census Bureau Senior Advisor Enrique Lamas, Defs.' Supp. Rule 26(a)(1) Disclosures and Rule 26(a)(2)(C) Disclosures, *Alabama v. Dep't of Commerce*, No. 2:18-cv-00772-RDP (N.D. Ala. Mar. 13, 2020).

exclusion of undocumented immigrants from the census apportionment count will cause numerous harms to Plaintiffs.  The harms are due both to the apportionment consequences themselves, and to the chilling effect that the Memorandum will have on the responses of Plaintiffs' residents to the still-ongoing 2020 Census.  Defendants' decision to exclude undocumented immigrants from the apportionment count was announced just weeks before Census Bureau enumerators were scheduled to go into the field to encourage households to respond to the census, creating confusion and further increasing the risk of a differential undercount harmful to Plaintiffs.

46.   The Memorandum and the exclusion of undocumented immigrants from the census apportionment count will likely cause Plaintiffs to lose one or more seats in the U.S. House of Representatives and, consequently, one or more electors in the Electoral College.  President Trump expressly states in the Memorandum that this is a primary purpose of excluding undocumented immigrants from the apportionment count:

> Current estimates suggest that one State is home to more than 2.2 million illegal aliens, constituting more than 6 percent of the State's entire population. Including these illegal aliens in the population of the State for the purpose of apportionment could result in the allocation of two or three more congressional seats than would otherwise be allocated.

85 Fed. Reg. at 44,680.  Upon information and belief, the State referred to in this passage is the State of California.

47.   The Memorandum and the exclusion of undocumented immigrants from the census apportionment count will likely cause Plaintiffs to lose federal funding, due to both Plaintiffs' loss of political power in Congress and the differential undercount of Plaintiffs' residents.  A complete and accurate count of all persons is critical to determine grant amounts provided to states and localities for various federal programs.

48.   The Memorandum and the exclusion of undocumented immigrants from the census apportionment count will impair Plaintiffs' congressional, state-level, and local redistricting efforts.  The exclusionary apportionment count and differential undercount will harm Plaintiffs'

1    ability to redistrict based on the total number of residents in the state and to comply with

2    Plaintiffs' related constitutional obligations for redistricting.

3        49.    The Memorandum, the exclusion of undocumented immigrants from the census

4    apportionment count, and the resulting differential undercount of Plaintiffs' residents will also

5    harm the quality and accuracy of census data, including data on resident characteristics.  This

6    harm to the data will impede Plaintiffs' performance of critical government functions.

7        50.    Finally, the Memorandum, the exclusion of undocumented immigrants from the

8    census apportionment count, and the resulting differential undercount of Plaintiffs' residents have

9    required, and imminently will require, Plaintiffs to expend additional resources, including time

10   and money, in order to mitigate the differential undercount.

11                            **FIRST CLAIM FOR RELIEF**

12   **VIOLATION OF ACTUAL ENUMERATION AND APPORTIONMENT MANDATES**
     **(U.S. Const. art. I, § 2, cl. 3; U.S. Const. amend. XIV, § 2)**
13

14       51.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and

15   paragraph set forth previously.

16       52.    The Constitution requires the "actual Enumeration" of all persons in each state every

17   ten years.  U.S. Const. art. I, § 2, cl. 3.

18       53.    The Fourteenth Amendment requires that "Representatives shall be apportioned

19   among the several States according to their respective numbers, counting the whole number of

20   persons in each State."  U.S. Const. amend. XIV, § 2.

21       54.    Undocumented immigrants are recognized as persons under the Fourteenth

22   Amendment.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982).

23       55.    Defying these constitutional mandates to count all persons, including undocumented

24   immigrants, for the purpose of apportionment, the Memorandum declares that "it is the policy of

25   the United States to exclude from the apportionment base" undocumented immigrants.  85 Fed.

26   Reg. at 44,680.  The Memorandum further instructs the Secretary of Commerce "to provide

27   information permitting the President" to implement this unconstitutional policy.  This policy, and

28

1    any action Defendants take to further the policy, violates the Constitution's Enumeration Clause

2    and the Apportionment Clause of the Fourteenth Amendment.

3         56.    Defendants' violations of the Enumeration Clause and the Apportionment Clause

4    cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of

5    California's proportionate share of congressional representatives and Electoral College electors.

6                           **SECOND CLAIM FOR RELIEF**

7                       **VIOLATION OF SEPARATION OF POWERS**
     **(U.S. Const. art. I, § 1; U.S. Const. art. II, § 3)**

8

9         57.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and

10   paragraph set forth previously.

11        58.    Article I, Section 1 of the Constitution enumerates that "[a]ll legislative Powers

12   herein granted shall be vested in [the] Congress."

13        59.    Article II, Section 3 of the Constitution requires the President to "take Care that the

14   Laws be faithfully executed."

15        60.    The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment,

16   "vests Congress with virtually unlimited discretion in conducting the decennial 'actual

17   Enumeration.'" *Dep't of Commerce v. New York*, 139 S. Ct. at 2566 (quoting *Wisconsin v. City of*

18   *New York*, 517 U.S. 1, 19 (1996)).

19        61.    Within nine months of the census date, Congress requires the Secretary to report to

20   the President "[t]he tabulation of total population by States . . . as required for the apportionment

21   of Representatives in Congress among the several States . . . ." 13 U.S.C. § 141(b). Based on

22   that tabulation, Congress mandates that the President "shall transmit to the Congress a statement

23   showing the whole number of persons in each State . . . and the number of Representatives to

24   which each State would be entitled under an apportionment" calculated by "the method of equal

25   proportions." 2 U.S.C. § 2a(a).

26        62.    Congress did not authorize the President to exclude undocumented immigrants from

27   the apportionment base. Yet the Memorandum proclaims that when the President calculates "the

28   number of Representatives to which each State would be entitled" and "transmits to the Congress

                                    13

a statement" providing that calculation, he will exclude undocumented immigrants from the apportionment base in disregard of the congressional mandate in 2 U.S.C. § 2a(a).  85 Fed. Reg. at 44,680.

63.    Under the separation of powers, the executive branch "may not decline to follow a statutory mandate . . . simply because of policy objections.  *In re Aiken Cty.*, 725 F.3d 255, 259 (D.C. 2013).  The President's unilateral exclusion of undocumented immigrants from the apportionment base is "incompatible" with Congress's will.  *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

64.    Nor has Congress delegated to the President the authority to take the census or to dictate what is included in the Secretary's report to him.  By requiring the Secretary, in preparing his report to the President, to "take all appropriate action" to implement the Memorandum's unconstitutional policy of excluding undocumented immigrants from the apportionment base, and to include in the report estimates of the number of undocumented immigrants in each state, 85 Fed. Reg. at 44,680, the President disregards Congress's intent in the Census Act that all persons be counted in the apportionment.  *See Youngstown*, 343 U.S. at 637 (Jackson, J., concurring).

65.    When the President usurps Congress's authority in this manner, "his power is at its lowest ebb," *id.*, and he has failed his duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.  The Memorandum thus violates the Constitution's separation of powers.

66.    The President's violations of separation of powers principles cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF CENSUS ACT (ULTRA VIRES)**
**(2 U.S.C. § 2a(a); 13 U.S.C. § 141)**

67.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

68.    The Census Act requires the Secretary of Commerce to report to the President, within nine months of the census date, "[t]he tabulation of total population by States . . . as required for

14

the apportionment of Representatives in Congress among the several States . . . ."  13 U.S.C.

§ 141(b).  Based on that tabulation, the President "shall transmit to the Congress a statement

showing the whole number of persons in each State . . . and the number of Representatives to

which each State would be entitled under an apportionment" calculated by "the method of equal

proportions."  2 U.S.C. § 2a(a).

69.    To determine "[t]he tabulation of total population by States," 13 U.S.C. § 141(b),

persons were counted at their "usual residence" under "the first enumeration Act and ha[ve] been

[so counted] by the Census Bureau ever since . . . ."  *Franklin v. Massachusetts*, 505 U.S. 788,

804 (1992).  The Census Bureau has adopted this methodology in its Residence Rule, which

requires that each person is counted in "the place where [the] person lives and sleeps most of the

time."  83 Fed. Reg. at 5526.

70.    Under the Residence Rule, "[c]itizens of foreign countries living in the United States"

are "[c]ounted at the U.S. residence where they live and sleep most of the time."  83 Fed. Reg. at

5533.  Undocumented immigrants are thus counted at their usual residence and included in the

tabulation of total population reported to the President.  *Id.*

71.    The Memorandum violates 13 U.S.C. § 141.  It directs the Secretary, in preparing his

report to the President, to "take all appropriate action" to implement the Memorandum's

unconstitutional policy of excluding undocumented immigrants from the apportionment base, and

to include in the report estimates of the number of undocumented immigrants in each state.  These

directives violate 13 U.S.C. § 141's requirements that the Secretary conduct an actual

Enumeration to determine the "total population by States"—including undocumented

immigrants—"as required for the apportionment of Representatives in Congress among the

several States," and report only that tabulation to the President.

72.    The Memorandum also violates 2 U.S.C. § 2a(a).  It proclaims that when the

President calculates "the number of Representatives to which each State would be entitled" and

"transmits to the Congress a statement" providing that calculation, 2 U.S.C. § 2a(a), he will

exclude undocumented immigrants from the apportionment base. 85 Fed. Reg. at 44,680.  This

policy violates 2 U.S.C. § 2a(a)'s requirements that the President use only the actual Enumeration

of "the whole number of persons in each State" to calculate the apportionment of congressional representatives, and to perform that calculation "by the . . . method of equal proportions."

73.  Neither the President nor an agency can take any action that exceeds the scope of constitutional or statutory authority.  *See Youngstown*, 343 U.S. at 588-89.  By violating the Census Act, the President and the Secretary act ultra vires.

74.  Defendants' violations of the Census Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF CENSUS ACT**
**(13 U.S.C. § 195)**

75.  Plaintifffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

76.  The Memorandum also violates the Census Act because it directs Defendants to violate the prohibition in section 195 on the use of statistical sampling for determining the apportionment count.  *See* 13 U.S.C. § 195.

77.  Section 195 states: "Except for the determination of population for purposes of apportionment of Representatives in Congress among the several States, the Secretary shall, if he considers it feasible, authorize the use of the statistical method known as 'sampling' in carrying out the provisions of this title."

78.  The Supreme Court has determined that Section 195 "directly prohibits the use of sampling in the determination of population for purposes of apportionment."  *House of Representatives*, 525 U.S. at 338 (opinion of the Court).

79.  The 2020 Census questionnaire contains no questions on citizenship or immigration status, and thus, Defendants have taken no "actual enumeration," *see* U.S. CONST. art. I, § 2, cl. 3, of residents' citizenship or immigration status.

80.     On information and belief, Defendants' implementation of the Memorandum will therefore likely require them to violate section 195 by using statistical sampling to determine a census apportionment count that excludes undocumented immigrants.

81.     Any such "sampling," which seeks to extrapolate the features of an entire population from a small segment thereof, is distinguishable from "imputation," which simply seeks to fill in missing data as part of an effort to count individuals one by one. *See Utah v. Evans*, 536 U.S. 452, 466-73 (2002).

82.     Neither the President nor an agency can take any action that exceeds the scope of constitutional or statutory authority. *See Youngstown*, 343 U.S. at 588-89.  By violating the Census Act, the President and the Secretary also act ultra vires.

83.     Defendants' violations of the Census Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
**(Action Not in Accordance with Law in Violation of 5 U.S.C. § 706)**

84.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

85.     The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment, is implemented through the Census Act.  The Census Act requires the Secretary of Commerce to report to the President, within nine months of the census date, "[t]he tabulation of total population by States"—including undocumented immigrants—"as required for the apportionment of Representatives in Congress among the several States . . . ."  13 U.S.C. § 141(b).  Based on that tabulation, the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions."  2 U.S.C. § 2a(a).

86.    The Administrative Procedure Act provides that a court must "hold unlawful and set aside agency action" that is not in accordance with law, contrary to constitutional right, in excess of statutory authority, or without observance of procedure required by law.  5 U.S.C. § 706(2).

87.    The Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment is not in accordance with and exceeds the President's authority under the Census Act, and it is contrary to the Enumeration Clause.

88.    Upon information and belief, the Department of Commerce has directed or will direct the Census Bureau, in a final agency action, to implement the Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment, in violation of these provisions of the Administrative Procedure Act.

89.    Among the violations is Defendants' failure to observe the Administrative Procedure Act's notice-and-comment rulemaking requirement before dispensing with the Census Bureau's long-established Residence Rule.  Absent sufficient notice and comment, the Census Bureau is prohibited from implementing the Memorandum's unconstitutional policy of excluding undocumented immigrants from the enumeration used for apportionment and superseding the Residence Rule's requirement to count all persons—including undocumented immigrants—"at the U.S. residence where they live and sleep most of the time."  83 Fed. Reg. at 5533.

90.    Defendants have or imminently will also violate the Administrative Procedure Act to the extent that, in order to exclude undocumented immigrants from the apportionment, Defendants utilize any statistical method to that fails to comport with the constitutional obligation to conduct an "actual Enumeration," U.S. Const. art. 1, § 2, cl. 3, or obligations under the Census Act.

91.    The Secretary's actions to implement the Memorandum's policy are additional final agency actions that violate these provisions of the Administrative Procedure Act.

92.    Defendants' violations of the Administrative Procedure Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

**SIXTH CLAIM FOR RELIEF**

**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT**
**(Action that Is Arbitrary and Capricious in Violation of 5 U.S.C. § 706)**

93.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

94.     The Constitution's Enumeration Clause, as amended by the Fourteenth Amendment, is implemented through the Census Act.  The Census Act requires the Secretary of Commerce to report to the President, within nine months of the census date, "[t]he tabulation of total population by States"—including undocumented immigrants—"as required for the apportionment of Representatives in Congress among the several States . . . ." 13 U.S.C. § 141(b).  Based on that tabulation, the President "shall transmit to the Congress a statement showing the whole number of persons in each State . . . and the number of Representatives to which each State would be entitled under an apportionment" calculated by "the method of equal proportions."  2 U.S.C. § 2a(a).

95.     The Administrative Procedure Act provides that a court must "hold unlawful and set aside agency action that is arbitrary and capricious, an abuse of discretion, runs counter to the evidence before the agency, or fails to consider an important aspect of the problem.  5 U.S.C. § 706; *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

96.     Upon information and belief, the Department of Commerce has directed or will direct the Census Bureau, in a final agency action, to implement the Memorandum's policy of excluding undocumented immigrants from the enumeration used for apportionment, in violation of these provisions of the Administrative Procedure Act.

97.     Defendants act arbitrarily and capriciously because, among other things, they acted or will imminently act without sufficient data, and without sufficient time to produce such data, to determine the total number of undocumented immigrants in each state to exclude from the apportionment base.

98.     The Secretary's actions to implement the Memorandum's policy are additional final agency actions that violate these provisions of the Administrative Procedure Act.

99.   Defendants' violations of the Administrative Procedure Act cause ongoing, irreparable harm to Plaintiffs and their residents, including the denial of California's proportionate share of congressional representatives and Electoral College electors.

### SIXTH CLAIM FOR RELIEF

### DECLARATORY RELIEF
### (28 U.S.C. § 2201)

100.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

101.   An actual controversy presently exists between Plaintiffs and Defendants about whether the Constitution and Census Act require the apportionment base used to apportion congressional representatives to include all persons counted in each state, including undocumented immigrants.

102.   Plaintiffs are entitled to a declaration that the Constitution and the Census Act require the apportionment base used to apportion congressional representatives to include all persons counted in each state, including undocumented immigrants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Issue a declaration that Defendants' decision to exclude undocumented immigrants from the apportionment base following the 2020 Census, and any action to implement that decision, violate the Constitution and laws of the United States;

2.     Issue a declaration that Defendants' decision to exclude undocumented immigrants from the apportionment base following the 2020 Census, and any action to implement that decision, violate the Administrative Procedure Act;

3.     Issue a preliminary and permanent injunction enjoining Defendants and all those acting in concert with them from excluding undocumented immigrants from the apportionment base following the 2020 Census, or taking any action to implement that policy;

4.     Issue a writ of mandamus compelling the Secretary of Commerce to tabulate and report the total population by States under 13 U.S.C. § 141(b) based on the actual enumeration of

the whole number of persons in each state, including undocumented immigrants, without

providing a report estimating the number of undocumented immigrants in each state;

5.     Issue a writ of mandamus compelling the President to transmit to the Congress a

statement showing the whole number of persons in each State, including undocumented

immigrants, and the number of congressional representatives to which each State would be

entitled under an apportionment calculated by the method of equal proportions;

6.     Award Plaintiffs costs, expenses, and reasonable attorney fees; and

7.     Award such other relief as the Court deems just and proper.

Dated:  August 24, 2020                          Respectfully submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
ANTHONY R. HAKL
Supervising Deputy Attorney General


/s/ R. Matthew Wise_____

GABRIELLE D. BOUTIN
R. MATTHEW WISE
Deputy Attorneys General
*Attorneys for Plaintiff State of California*

Dated:  August 24, 2020                          MIKE FEUER
City Attorney for the City of Los Angeles

*/s/ Valerie Flores_____*
VALERIE FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL J. DUNDAS, SBN 226930
Deputy City Attorney
200 North Main Street, 7th Floor, MS 140
Los Angeles, CA  90012
Telephone: (213) 978-8130
Fax: (213) 978-8222
Email: Valerie.Flores@lacity.org


Dated:  August 24, 2020                          CHARLES PARKIN
City Attorney for the City of Long Beach

*/s/ Charles Parkin_____*

1    SBN 159162
     333 W. Ocean Blvd., 11th Floor
2    Long Beach CA, 90802
     Telephone: (562) 570-2200
3    Fax: (562) 436-1579
     Email: Charles.Parkin@longbeach.gov
4

5    Dated:  July 28, 2020                    BARBARA J. PARKER
                                              City Attorney for the City of Oakland
6
                                              /s/ Maria Bee _____
7                                             MARIA BEE, SBN 167716
                                              Chief Assistant City Attorney
8                                             MALIA MCPHERSON
                                              Deputy City Attorney
9                                             City Hall, 6th Floor
                                              1 Frank Ogawa Plaza
10                                            Oakland, California 94612
                                              Telephone: (510) 238-3601
11                                            Fax: (510) 238-6500
                                              Email: mbee@oaklandcityattorney.org
12

13   Dated:  July 28, 2020                    DANNIS WOLIVER KELLEY

14
                                              /s/ Sue Ann Salmon Evans
15                                            Sue Ann Salmon Evans, SBN 151562
                                              Keith A. Yeomans, SBN 245600
16                                            115 Pine Avenue, Suite 500
                                              Long Beach, CA  90802
17                                            Telephone: 562.366.8500
                                              Facsimile: 562.366.8505
18                                            sevans@DWKesq.com
                                              kyeomans@DWKesq.com
19                                            Attorneys for Los Angeles United School
                                              District
20

21   Dated:  July 28, 2020                    /s David I. Holtzman_____
                                              DAVID I. HOLTZMAN, SBN 299287
22                                            DANIEL P. KAPPES
                                              JACQUELINE N. HARVEY
23                                            HOLLAND & KNIGHT LLP
                                              50 California Street, 28th Floor
24                                            San Francisco, CA 94111
                                              Telephone: (415) 743-6970
25                                            Fax: (415) 743-6910
                                              Email: david.holtzman@hklaw.com
26                                            Attorneys for Plaintiff County of Los Angeles

27

28

1

## **ATTESTATION**

2   I, R. Matthew Wise, am the ECF user whose user ID and password authorized the filing of

3   this document.  Under Civil L.R. 5-1(i)(3), I attest that all signatories to this document have

4   concurred in this filing.

5   DATED:  August 24, 2020                           /s/      R. Matthew Wise_____

6                                                                R. Matthew Wise

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT  1

Federal Register

Vol. 85, No. 142

Thursday, July 23, 2020

# Presidential Documents

Title 3—

The President

Memorandum of July 21, 2020

### Excluding Illegal Aliens From the Apportionment Base Following the 2020 Census

**Memorandum for the Secretary of Commerce**

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1.** *Background.* In order to apportion Representatives among the States, the Constitution requires the enumeration of the population of the United States every 10 years and grants the Congress the power and discretion to direct the manner in which this decennial census is conducted (U.S. Const. art. I, sec. 2, cl. 3). The Congress has charged the Secretary of Commerce (the Secretary) with directing the conduct of the decennial census in such form and content as the Secretary may determine (13 U.S.C. 141(a)). By the direction of the Congress, the Secretary then transmits to the President the report of his tabulation of total population for the apportionment of Representatives in the Congress (13 U.S.C. 141(b)). The President, by law, makes the final determination regarding the "whole number of persons in each State," which determines the number of Representatives to be apportioned to each State, and transmits these determinations and accompanying census data to the Congress (2 U.S.C. 2a(a)). The Congress has provided that it is "the President's personal transmittal of the report to Congress" that "settles the apportionment" of Representatives among the States, and the President's discretion to settle the apportionment is more than "ceremonial or ministerial" and is essential "to the integrity of the process" (*Franklin* v. *Massachusetts*, 505 U.S. 788, 799, and 800 (1992)).

The Constitution does not specifically define which persons must be included in the apportionment base. Although the Constitution requires the "persons in each State, excluding Indians not taxed," to be enumerated in the census, that requirement has never been understood to include in the apportionment base every individual physically present within a State's boundaries at the time of the census. Instead, the term "persons in each State" has been interpreted to mean that only the "inhabitants" of each State should be included. Determining which persons should be considered "inhabitants" for the purpose of apportionment requires the exercise of judgment. For example, aliens who are only temporarily in the United States, such as for business or tourism, and certain foreign diplomatic personnel are "persons" who have been excluded from the apportionment base in past censuses. Conversely, the Constitution also has never been understood to exclude every person who is not physically "in" a State at the time of the census. For example, overseas Federal personnel have, at various times, been included in and excluded from the populations of the States in which they maintained their homes of record. The discretion delegated to the executive branch to determine who qualifies as an "inhabitant" includes authority to exclude from the apportionment base aliens who are not in a lawful immigration status.

In Executive Order 13880 of July 11, 2019 (Collecting Information About Citizenship Status in Connection With the Decennial Census), I instructed executive departments and agencies to share information with the Department of Commerce, to the extent permissible and consistent with law, to allow the Secretary to obtain accurate data on the number of citizens, non-citizens, and illegal aliens in the country. As the Attorney General and I explained at the time that order was signed, data on illegal aliens could be relevant for the purpose of conducting the apportionment, and we intended to examine that issue.

**Sec. 2.** *Policy.* For the purpose of the reapportionment of Representatives following the 2020 census, it is the policy of the United States to exclude from the apportionment base aliens who are not in a lawful immigration status under the Immigration and Nationality Act, as amended (8 U.S.C. 1101 *et seq.*), to the maximum extent feasible and consistent with the discretion delegated to the executive branch. Excluding these illegal aliens from the apportionment base is more consonant with the principles of representative democracy underpinning our system of Government. Affording congressional representation, and therefore formal political influence, to States on account of the presence within their borders of aliens who have not followed the steps to secure a lawful immigration status under our laws undermines those principles. Many of these aliens entered the country illegally in the first place. Increasing congressional representation based on the presence of aliens who are not in a lawful immigration status would also create perverse incentives encouraging violations of Federal law. States adopting policies that encourage illegal aliens to enter this country and that hobble Federal efforts to enforce the immigration laws passed by the Congress should not be rewarded with greater representation in the House of Representatives. Current estimates suggest that one State is home to more than 2.2 million illegal aliens, constituting more than 6 percent of the State's entire population. Including these illegal aliens in the population of the State for the purpose of apportionment could result in the allocation of two or three more congressional seats than would otherwise be allocated.

I have accordingly determined that respect for the law and protection of the integrity of the democratic process warrant the exclusion of illegal aliens from the apportionment base, to the extent feasible and to the maximum extent of the President's discretion under the law.

**Sec. 3.** *Excluding Illegal Aliens from the Apportionment Base.* In preparing his report to the President under section 141(b) of title 13, United States Code, the Secretary shall take all appropriate action, consistent with the Constitution and other applicable law, to provide information permitting the President, to the extent practicable, to exercise the President's discretion to carry out the policy set forth in section 2 of this memorandum. The Secretary shall also include in that report information tabulated according to the methodology set forth in *Final 2020 Census Residence Criteria and Residence Situations,* 83 FR 5525 (Feb. 8, 2018).

**Sec. 4.** *General Provisions.* (a) Nothing in this memorandum shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This memorandum shall be implemented consistent with applicable law and subject to the availability of appropriations.

**Federal Register** / Vol. 85, No. 142 / Thursday, July 23, 2020 / Presidential Documents   **44681**

(c) This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*Washington, July 21, 2020*

[FR Doc. 2020–16216
Filed 7–22–20; 2:00 pm]
Billing code 3510–07–P

# EXHIBIT 2

Statement from the President Regarding Apportionment | The White House ... whitehouse.gov ...ings/statement-president-re...

Case 5:20-cv-05169-LHK-RRC-EMC Document 36 ... Filed 08/24/20 ... Page 29 of 31



STATEMENTS & RELEASES

# Statement from the President Regarding Apportionment

**IMMIGRATION**   Issued on: July 21, 2020

★ ★ ★

Last summer in the Rose Garden, I told the American people that I would not back down in my effort to determine the citizenship status of the United States population.  Today, I am following through on that commitment by directing the Secretary of Commerce to exclude illegal aliens from the apportionment base following the 2020 census.

There used to be a time when you could proudly declare, "I am a citizen of the United States."  But now, the radical left is trying to erase the existence of this concept and conceal the number of illegal aliens in our country.  This is all part of a broader left-wing effort to erode the rights of Americans citizens, and I will not stand for it.

Today's action to exclude illegal aliens from the apportionment base reflects a better understanding of the Constitution and is consistent with the principles of our representative democracy.  My Administration will not support giving congressional representation to aliens who enter or remain in the country unlawfully, because doing so would create perverse incentives and undermine our system of government.  Just as we do not give political power to people who are here

temporarily, we should not give political power to people who should not be here at all.

Under an Executive Order I signed last year, Federal departments and agencies have been collecting the information needed to conduct an accurate census and inform responsible decisions about public policy, voting rights, and representation in Congress. Today's action further advances this effort and is another example of my Administration's commitment to faithfully representing the citizens of the United States and putting their interests first.

# CERTIFICATE OF SERVICE

Case Name: **State of California, et al. v.**      No.   **5:20-cv-05169-LHK**
                   **Donald J. Trump, et al.**

I hereby certify that on <u>August 24, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 24, 2020</u>, at Sacramento, California.


       Eileen A. Ennis                           */s/ Eileen A. Ennis*
          Declarant                               Signature

SA2020302398
34346750.docx